120 S.W.3d 873 (2003)
In the Interest of B.N.F. and J.D.F., Jr., Children.
No. 2-02-371-CV.
Court of Appeals of Texas, Fort Worth.
October 16, 2003.
*874 Cole Fulks, P.C., J. Cole Fulks, Saginaw, for Appellant.
Gene Douglas, Wichita Falls, for Appellee.
PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

OPINION
DIXON W. HOLMAN, Justice.
Appellant John Dehaven Fee appeals from the trial court's order reinstating the standard child possession order granted to Appellee Kelly Jean Fee in their 1999 divorce decree.

FACTUAL AND PROCEDURAL BACKGROUND
Appellant and Appellee were divorced in 1999. The final divorce decree granted Appellant and Appellee joint managing conservatorship over their two children, B.N.F. and J.D.F., Jr. ("J.D.F.") Appellant was granted the right to establish the children's primary residence and Appellee was granted possession according to the standard possession order ("SPO") of the Texas Family Code. See Tex. Fam.Code Ann. § 153.311-.317 (Vernon 2002). Although Appellant was appointed possessory conservator, the children have lived with Appellant's parents, Wayne and Patty Fee, for most of the time since the divorce.
On January 3, 2000, Appellant filed a Petition to Modify the Parent-Child Relationship, asking the court to limit Appellee's possession rights to supervised visitation only. Appellant claimed in a sworn affidavit that Appellee engaged in sexual contact with the children by touching them on the genitals. At the time Appellant filed his petition, B.N.F. was three and J.D.F. was two.
Then in March 2000, Appellant filed a petition to terminate Appellee's parental rights. Appellant's petition included an *875 affidavit from Darlene Hall, an agent of the Texas Department of Protective and Regulatory Services ("TDPRS"), who recommended against allowing Appellee unsupervised visits with the children. The court issued a temporary restraining order on March 27, 2000, that terminated Appellee's visitation rights with the children until a hearing could be held on the matter. On May 4, 2000, the hearing was postponed and Appellee was awarded visitation on Tuesdays and Thursdays from 7:00 p.m. to 9:00 p.m. under the supervision of the TDPRS.
Tracey Jennings, Guardian and Attorney Ad Litem for the children, thereafter filed a motion to modify the temporary orders and asked the court to exclude Appellee from access to the children. Jennings attached an affidavit stating, "At this time, I do not believe, based on information received from the children's counselor, that [it] is in their best interest to continue visitation with [Appellee]." On June 12, 2000, the court issued a temporary restraining order that prohibited Appellee from exercising visitation with the children until further notice from the court.
A custody hearing was held in August 2000, wherein the trial court heard evidence regarding allegations that Appellee engaged in sexual contact with the children. Pat Mashburn, the children's counselor, testified that both children told her Appellee had sexual contact with them and that the children exhibited behavior consistent with children that are exposed to a sexual perpetrator. Kathy Dudley, a CPS caseworker, testified that both children told her Appellee touched them on the "tee tee." Dudley also testified that a doctor performed a colposcope exam on the little girl, B.N.F., and reported that the findings did not support B.N.F.'s statements.
At the hearing, Appellee admitted that she was convicted for the offense of sexual assault of a child in 1995, when she was seventeen years old. Appellee was tried as an adult for sexual assault, which was committed over several years as a minor and ended when she was fifteen. Appellee testified that she attended weekly counseling sessions and group counseling as required by the terms of her probated sentence. Appellant's aunt and uncle, Jim and Kathy Brinkley, testified on Appellee's behalf, stating that it would not concern them to have Appellee around their own children despite their knowledge of her criminal conviction. The Brinkleys, as volunteer visitation supervisors, testified that they observed no inappropriate behavior during the times that they supervised Appellee's possession of the children.
On October 16, 2000, the parties reached a settlement agreement and the trial court approved the terms. The approved settlement was incorporated into a court order that included the following pertinent provisions:
1. The suit for termination of the parent-child relationship between the children the subject of this suit and [Appellee] is to be dismissed with prejudice to the refiling of same concerning the factual allegations raised in that petition.
....
3. [Appellee] shall immediately resume standard visitation.
4. For the first six months following the entry of this Order, the standard visitation of [Appellee] shall be supervised by such persons and under such limitations as the Court might determine and further order herein.
....
6. Counselor for [Appellee], [Lawrin] Dean, shall provide counseling services to [Appellee] to assist in re-establishing the parent-child relationship for such time as [Lawrin] Dean directs or until May, 2003.
7. [Lawrin] Dean is authorized to recommend to the Court an extension of *876 supervised visitation beyond the initial six month period if she deems appropriate.
The court ordered supervised visitation for a period of 180 days and authorized Appellee to resume the standard visitation rights awarded in the divorce decree upon the completion of the 180-day period. The court stipulated, however, that "[i]n the event that [Lawrin] Dean should recommend continuation of supervised visitation beyond the initial six month period after the Decree entered herein, then in such event the Court will reconsider such extension upon due notice and opportunity to be heard by all parties." A further hearing was set to determine whether the period of supervised visitation should continue beyond the period of time recommended by Dean.
At the hearing, held on August 9, 2002, the court still did not have Dean's recommendation as to Appellee's visitation rights. The trial court discussed recessing the hearing until the court received Dean's report but all parties agreed to waive their rights to a hearing and any further testimony from Dean. The judge ordered Dean to provide her written recommendations so the court could prepare its final order.
Dean's report, received in September 2002, indicates that Appellee passed a polygraph test with questions regarding inappropriate sexual conduct that covered a period of six years. Dean remarked that Appellee appeared to have a positive relationship with the children and noted that juvenile sex offenders are very different than adult sex offenders. Dean recommended unsupervised visitation stating,
Based on the fact that this sexual behavior occurred when [Appellee] was a young child, she has successfully completed an intensive treatment program, she has demonstrated significant progress in treatment and Court supervision, and the fact that she has had no sexual contact with anyone younger than 17 during the past 6 years (on probation), [i]t is my opinion, that [Appellee] does not present a risk to her children ... and that she should be allowed unsupervised visitation with them.
Upon the receipt of Dean's report, the court issued an order finding that "it is in the best interest of the parties and the children that [Appellee] be granted standard unsupervised visitation rights with the children."
Appellant appealed the trial court's order claiming insufficiency of the evidence and abuse of discretion. In Appellant's first, second, and fourth issues, he argues that the trial court abused its discretion when it 1) permitted Appellee to have unsupervised visitation, 2) granted Appellee unrestricted access to the children as set forth in the SPO, and 3) failed to find that the SPO was inappropriate when considering Appellee's circumstances. Appellant claims in his third issue that the evidence is insufficient to show that Appellee's visitation under the SPO adequately protects the best interest of the children. Both parties grouped these issues in their arguments and we will do the same.

STANDARD OF REVIEW
Findings of fact and conclusions of law were not filed; this court must therefore presume that the trial court made all necessary findings to support its judgment. Pharo v. Chambers County, 922 S.W.2d 945, 948 (Tex.1996). When, as in this case, a reporter's record is part of the appellate record, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues. Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex.1989). Where such issues are raised, the applicable standard of review is the same as that to be applied in the review of jury findings or a trial court's findings of fact. Id.
*877 Under an abuse of discretion standard, legal and factual insufficiencies are not independent grounds for asserting error, but are, rather, relevant factors in assessing whether the trial court abused its discretion. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.1991); In re J.E.P., 49 S.W.3d 380, 386 (Tex.App.-Fort Worth 2000, no pet.). For this reason, we review all four issues under an abuse of discretion standard.
To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. See Carpenter v. Cimarron Hydrocarbons Corp., 98 S.W.3d 682, 687 (Tex.2002); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. Davis v. Huey, 571 S.W.2d 859, 862 (Tex.1978); see also Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex.1997). Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex.2002); Holley v. Holley, 864 S.W.2d 703, 706 (Tex.App.-Houston [1st Dist.] 1993, writ denied). Where the evidence supports the implied findings of fact, it is our duty to uphold the judgment on any theory of law applicable to the case. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990); Point Lookout W., Inc. v. Whorton, 742 S.W.2d 277, 278 (Tex. 1987).

DISCUSSION
In this case, we must decide whether the trial court abused its discretion in granting Appellee visitation according to the SPO set forth in the Texas Family Code. See Tex. Fam.Code Ann. § 153.311-.317. It is presumed under Texas law that the SPO "(1) provides reasonable minimum possession of a child for a parent named as a possessory conservator or joint managing conservator; and (2) is in the best interest of the child." Id. § 153.252. In ordering terms of possession that deviate from the SPO, the court may consider:
(1) the age, developmental status, circumstances, needs, and best interest of the child;
(2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and
(3) any other relevant factor.
Id. § 153.256.
Absent findings of fact and conclusions of law, we must uphold the trial court's judgment if evidence supports an implied finding that it was in the best interest of the children to grant Appellee visitation according to the SPO. See Roberson, 768 S.W.2d at 281. The evidence in the case at hand is sufficient to support the trial court's implied finding that Appellant did not overcome the presumption that the SPO was in the best interest of the children. The trial court's judgment is supported by testimony from Appellant's aunt and uncle in favor of Appellee and evidence that a colposcope exam performed on B.N.F. resulted in findings inconsistent with B.N.F.'s statements that she was sexually abused by Appellee. However, the strongest evidence in support of the trial court's implied findings emanates from the settlement agreement reached by the parties in October 2000.
As part of the settlement agreement approved by the court, the parties agreed that Dean was authorized to recommend to the court an extension of supervised visitation beyond the six-month period if she deemed it appropriate. And it was *878 only after the court received Dean's report that an order was issued granting standard unsupervised visitation rights. Dean's recommendation to allow unsupervised visitation indicates that Appellee passed a polygraph test covering six years, successfully completed an intensive treatment program, and does not present a risk to the children. The trial court acted well within the scope of the parties' approved settlement agreement. We hold that the trial court did not act arbitrarily or unreasonably in granting Appellee standard possession and therefore overrule issues one through four.
Appellant additionally argues that even if there is sufficient evidence to meet the abuse-of-discretion standard, the trial court erred in granting Appellee standard possession because to do so violates section 153.004(c) of the Texas Family Code. Section 153.004(c) requires the court to consider the commission of family violence in determining parental possession rights. Tex. Fam.Code Ann. § 153.004(c). Appellant asserts that the trial court based its decision only on the risk Appellee presently poses and not on her past behavior as required by the Texas Family Code. However, testimony at the hearing regarding Appellee's prior conviction, as well as Dean's letter addressing Appellee's past behavior, leads us to conclude that the trial court did consider Appellee's past behavior in deciding to grant standard possession. We hold that the trial court's decision to grant Appellee unsupervised standard possession did not violate section 153.004(c) of the Texas Family Code.

CONCLUSION
Having overruled all issues on appeal, we affirm the judgment of the trial court.