COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-178-CV
 
 
 
IN 
THE MATTER OF A.D.B.
 
 
 
------------
 
FROM 
THE 323RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
 
I. Introduction
 
        Appellant 
A.D.B. appeals from the trial court’s disposition order committing him to the 
Texas Youth Commission (TYC) for an indeterminate period not to exceed his 
twenty-first birthday. In his sole point on appeal, A.D.B. contends that the 
trial court abused its discretion by committing him to TYC. We will affirm.
II. Factual and 
Procedural Background
        On 
June 10, 2003, A.D.B. stipulated to evidence establishing that he engaged in 
delinquent conduct by committing two felony offenses of burglary of a 
habitation, one on March 29, 2003 and one on March 31, 2003. The trial court 
adjudicated A.D.B. deliquent and, during the disposition phase of the hearing, 
questioned A.D.B. regarding his four-year history of delinquent activity 
beginning when he was only eleven years old. A.D.B. admitted to adjudicated 
referrals for theft and unadjudicated referrals for burglary of a habitation, 
theft, grafitti, criminal trespass, runaway, unauthorized use of a motor 
vehicle, and electronic monitoring and non-reporting violations while on 
probation. A.D.B. testified that he had lived with his mother during the course 
of his four-year history with the juvenile system, including the six times that 
he had failed to comply with the terms of his probation. He also testified that 
he had completed three stays in the Tarrant County Post-Adjudication Program in 
the previous year and that he had recently had his probation extended until 
January 23, 2004 based on probation violations.
        The 
trial court admitted a social history report completed by A.D.B.’s probation 
officer, Carlin Lemear, on May 23, 2003. In his assessment of A.D.B. Lemear 
explained,
 
[A.D.B.] 
is a fifteen year old juvenile before the Juvenile Court for the tenth time. 
This matter presently before the Court involves his 19th delinquent 
referral to this Department.
 
[A.D.B.] 
does not take his probation seriously. He continues to skip school and not be 
available for his visits. When [A.D.B.] has attended school, he is disruptive 
and on several occasions, walked off of campus without permission. [A.D.B.] 
consistently leaves home without permission and stays gone for days at a time. 
Mom presents as if she has no [sic] idea where he is or why he left. She usually 
reports not knowing his whereabouts when [A.D.B.] is gone.
 
Due 
to [A.D.B.]’s continued violations of his probation (law violations, not being 
available for PO visits, not obeying his curfew and staying away from home 
without permission) his probation was extended for six months on 5/13/03. It was 
also extended so that he would have an opportunity to participate with the 
Family Partnership Program (FPP), however, during the hearing for his probation 
extension, [A.D.B.] reported to the courts that he did not want to participate 
with the Family Partnership Program.
 
Due 
to [A.D.B.]’s continued law violations and probation violations and him not 
willing to participate with FPP program, [A.D.B.] would benefit from a more 
structured environment.
 
        When 
the trial court questioned A.D.B. about his prior unwillingness to participate 
in local services through the FPP, he informed the trial court that he did in 
fact want to participate in the FPP. A.D.B. admitted that he had initially told 
Lemear that he did not want to participate in the FPP. However, he stated that 
he only did so because he wanted to make that decision with the help of his 
mother.
        According 
to A.D.B., he finally realized the importance of abiding by the terms and 
conditions of his probation. A.D.B. claimed that his past misbehavior was the 
result of him “hanging around the wrong crowd” and “making the wrong 
decisions,” but he indicated that he would stay away from the “wrong 
crowd” in the future and follow the guidelines set by his probation officer 
and his mother. He pointed to his improvement in behavior during the previous 
week in detention as evidence that he had learned his lesson and that he 
deserved another chance at probation. A detention evaluation offered by A.D.B. 
showed that, despite a rough beginning, A.D.B.’s attitude and behavior had 
progressively improved on a daily basis throughout his detention.
        A.D.B.’s 
mother testified that she felt somewhat responsible for A.D.B.’s misbehavior 
because she had not always spent enough time with him. She indicated that A.D.B. 
had cried and expressed remorse for his behavior when she recently visited him 
in detention. She also indicated that she believed A.D.B. had changed and that 
he now understood that he was responsible for his actions.
        During 
the hearing, the trial court received recommendations regarding A.D.B.’s 
placement from two professionals who had evaluated A.D.B. since he had been in 
juvenile detention. In a psychological evaluation conducted March 21, 2003, 
Phillip Davis, a psychologist, described A.D.B. as “an impulsive and 
oppositional young man.” According to Davis, he did not believe that A.D.B. 
was a “good candidate to be treated on an outpatient basis.” Instead, Davis 
recommended placement for A.D.B. in “a secure, highly structured, residential 
treatment program where his day-to-day behavior and his school behavior [could] 
be closely monitored.” He also noted that “[a] secure, [long-term] detention 
program with treatment resources would also be appropriate.”
        Dr. 
Allen Cahill, a psychiatrist, evaluated A.D.B. on May 21, 2003, after A.D.B. 
threatened suicide while in a juvenile detention facility. In his evaluation, 
Dr. Cahill described A.D.B. as “[a] highly manipulative but not particularly 
depressed boy,” who exhibited “no need for hospitalization.” According to 
Dr. Cahill, A.D.B. could “be monitored for impulsive behavior in a Juvenile 
facility”; however, he opined that A.D.B. was “so manipulative that he 
[could] be treated only in a closed environment.”
        At 
the conclusion of the hearing, the State recommended that A.D.B. be committed to 
TYC. After taking the matter under advisement for a brief period of time, the 
trial court issued a disposition order committing A.D.B. to the care, custody, 
and control of TYC for an indeterminate period of time. This appeal followed.
III. No Abuse 
of Discretion Shown
        In 
a single point, A.D.B. contends that the trial court abused its discretion by 
committing him to TYC because (1) the trial court included the instant offenses 
as part of the “previous adjudications” alleged as a basis for commitment in 
its disposition order and (2) the evidence is factually insufficient to support 
the trial court’s finding that reasonable efforts were made to prevent or 
eliminate the need to remove A.D.B. from his home.
        A. Standard of Review
        A 
juvenile court has broad discretion in determining a suitable disposition for a 
juvenile who has been adjudged to have engaged in delinquent conduct. In re 
C.J.H., 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.). 
Accordingly, we will not reverse the juvenile court’s findings regarding 
disposition absent a clear abuse of discretion. Id.
        To 
determine whether a trial court abused its discretion, we must decide whether 
the court acted without reference to any guiding rules or principles; in other 
words, whether the act was arbitrary or unreasonable. In re B.N.F., 120 
S.W.3d 873, 877 (Tex. App.—Fort Worth 2003, no pet.). Merely because a trial 
court may decide a matter within its discretion in a different manner than an 
appellate court would in a similar circumstance does not demonstrate that an 
abuse of discretion has occurred. Id.
        An 
abuse of discretion does not occur where the trial court bases its decisions on 
conflicting evidence. Id. Furthermore, an abuse of discretion does not 
occur as long as some evidence of substantive and probative character exists to 
support the trial court’s decision. Id.
        B. Inclusion of the Instant Offenses as Previous 
Adjudications
        In 
his brief, A.D.B. complains that the trial court abused its discretion by 
committing him to TYC because it included the March 29 and March 31 burglary of 
a habitation offenses as part of the “previous adjudications” alleged as a 
basis for commitment in its disposition order. We disagree.
        Because 
A.D.B. was on probation at the time of the instant offenses, during the same 
proceeding, the trial court considered a concurrent motion to modify disposition 
based on the March 29 and March 31 burglaries. In that case, the court 
determined that A.D.B. had violated the reasonable and lawful terms of his 
probation by committing the offenses, but denied the State’s motion to modify, 
finding that no disposition was necessary.
        In 
the present case, the trial court’s disposition order included the two 
burglary offenses in the listing of A.D.B.’s previous adjudications as the 
delinquent conduct supporting the concurrent motion to modify.[2]  
As A.D.B. correctly points out, the delinquent conduct alleged in the State’s 
motion to modify is the same conduct for which A.D.B. was adjudicated delinquent 
in the instant matter. However, the disposition order specifically labels these 
two offenses with the abbreviation “(MTM),” whereas it labels A.D.B.’s 
three previous juvenile adjudications with the abbreviation “(ADJ).” This 
fact demonstrates that the trial judge did not view the two instant burglary 
offenses as “previous adjudications,” but rather as acts of delinquent 
conduct giving rise to a concurrent motion to modify a prior disposition. A.D.B. 
does not challenge the accuracy of the three previous misdemeanor adjudications 
listed in his juvenile history or the trial court’s conclusion that he had 
been “previously adjudicated delinquent” on those offenses. Consequently, we 
are unpersuaded that the trial court’s inclusion of the two burglary offenses 
in the listing of A.D.B.’s previous adjudications caused the trial court to 
abuse its discretion.[3]
C. Factual Sufficiency of the Evidence
        A.D.B. 
also complains that the trial court abused its discretion by committing him to 
TYC because the evidence is factually insufficient to support the trial 
court’s finding that reasonable efforts were made to prevent or eliminate the 
need to remove A.D.B. from his home. We disagree.
        In 
determining whether the evidence is factually sufficient to support a juvenile 
court’s disposition order, we apply a civil standard of review. See D.L.C., 
124 S.W.3d 124, 375 (Tex. App.—Fort Worth 2003, no pet.). Thus, we consider 
and weigh all the evidence and set aside the judgment only if the finding is so 
against the great weight and preponderance of the evidence as to be manifestly 
unjust. See id.
        To 
commit a juvenile to TYC, the trial court must find and include in its 
disposition order its determination that (A) it is in the child’s best 
interests to be placed outside his home (B) reasonable efforts were made to 
prevent or eliminate the need for his removal from the home and to make it 
possible for the child to return to his home and (C) the child cannot be 
provided the quality of care and level of support and supervision in his home 
that he needs to meet the conditions of probation. Tex. Fam. Code Ann. § 54.04(i)(1) 
(Vernon 2004-05). In the instant case, the trial court made the mandatory 
findings in its disposition order. In addition, the trial court also provided 
several reasons for its findings, including the absence of facilities, services, 
or programs available to meet A.D.B.’s needs and its determination that the 
educational needs of A.D.B. could be met by TYC.
        On 
appeal, A.D.B. argues that his recent willingness to participate in the FPP and 
his behavioral improvement in detention renders the evidence factually 
insufficient to support the trial court’s determination that reasonable 
efforts were made to prevent or eliminate the need to remove A.D.B. from his 
home. Our review of the record, however, reveals numerous attempts over the 
previous four years to rehabilitate A.D.B. without resorting to commitment in 
TYC. It is clear from the record that probation, alternative schooling, stays in 
detention, and other types of intervention throughout the previous years did 
little to combat A.D.B.’s delinquent behavior. See In re J.D.P., 85 
S.W.3d 420, 429 (Tex. App.—Fort Worth 2002, no pet.). Considering the repeated 
efforts made by the juvenile justice system, the avenues exhausted, and the 
continuing concerns regarding A.D.B.’s behavior, we hold that the trial 
court’s finding that reasonable efforts were made to prevent or eliminate the 
need to remove A.D.B. from his home is not so against the great weight and 
preponderance of the evidence as to be manifestly unjust. See In re J.K.N., 
115 S.W.3d 166, 173 (Tex. App.—Fort Worth 2003, no pet.). Consequently, we 
hold that the trial court did not abuse its discretion by committing A.D.B. to 
TYC. We overrule A.D.B.’s sole point.
IV. Conclusion
        Having 
overruled A.D.B.’s sole point, we affirm the trial court’s judgment.

 
 
                                                          PER 
CURIAM
 
 
PANEL 
F:   WALKER, J.; CAYCE, C.J.; and LIVINGSTON, JJ.
 
DELIVERED: 
August 19, 2004

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
The trial court stated in its disposition order:
It 
further appears to the Court that the best interest of the child and the best 
interest of society will be served by committing him to the care, custody and 
control of the Texas Youth Commission, for the following reasons:
                . 
. . .
(4) 
The child has previously been adjudicated delinquent for the following offenses 
on the following dates:
Section 
of TPC/THSC            
Date of Offense       Date of Adj/Motn to 
Modify


30.02(FEL) 
(TPC)72468-J         
3/31/03                 
6/10/03(MTM)
30.02(FEL) 
(TPC)72468-J         
3/29/03                 
6/10/03(MTM)
31.03(MISD)(TPC)72468-J        
5/18/02                 
7/23/02(ADJ)
31.03(MISD)(TPC)71324-J        
11/19/02                
4/10/02(ADJ)
31.03(MISD)(TPC)71324-J        
3/5/02                  
4/10/02(ADJ) 
  
3.  
On April 23, 2004, the trial court entered a judgment nunc pro tunc correcting 
the trial court’s June 11, 2003 Order of Commitment by deleting the two 
offenses from the listing of previous adjudications.