In the matter of ADB

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-178-CV

IN THE MATTER OF A.D.B. 

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant A.D.B. appeals from the trial court’s disposition order committing him to the Texas Youth Commission (TYC) for an indeterminate period not to exceed his twenty-first birthday.  In his sole point on appeal, A.D.B. contends that the trial court abused its discretion by committing him to TYC.  We will affirm.

II.  Factual and Procedural Background 

On June 10, 2003, A.D.B. stipulated to evidence establishing that he engaged in delinquent conduct by committing two felony offenses of burglary of a habitation, one on March 29, 2003 and one on March 31, 2003.  The trial court adjudicated A.D.B. deliquent and, during the disposition phase of the hearing, questioned A.D.B. regarding his four-year history of delinquent activity beginning when he was only eleven years old.  A.D.B. admitted to adjudicated referrals for theft and unadjudicated referrals for burglary of a habitation, theft, grafitti, criminal trespass, runaway, unauthorized use of a motor vehicle, and electronic monitoring and non-reporting violations while on probation.  A.D.B. testified that he had lived with his mother during the course of his four-year history with the juvenile system, including the six times that he had failed to comply with the terms of his probation.  He also testified that he had completed three stays in the Tarrant County Post-Adjudication Program 
in the previous year and that he had recently had his probation extended until January 23, 2004 based on probation violations. 

The trial court admitted a social history report completed by A.D.B.’s probation officer, Carlin Lemear, on May 23, 2003.  In his assessment of A.D.B. Lemear explained,

[A.D.B.] is a fifteen year old juvenile before the Juvenile Court for the tenth time.  This matter presently before the Court involves his 19
th
 delinquent referral to this Department.  

[A.D.B.] does not take his probation seriously.  He continues to skip school and not be available for his visits.  When [A.D.B.] has attended school, he is disruptive and on several occasions, walked off of campus without permission.  [A.D.B.] consistently leaves home without permission and stays gone for days at a time.  Mom presents as if she has no [sic] idea where he is or why he left.  She usually reports not knowing his whereabouts when [A.D.B.] is gone.

Due to [A.D.B.]’s continued violations of his probation (law violations, not being available for PO visits, not obeying his curfew and staying away from home without permission) his probation was extended for six months on 5/13/03.  It was also extended so that he would have an opportunity to participate with the Family Partnership Program (FPP), however, during the hearing for his probation extension, [A.D.B.] reported to the courts that he did not want to participate with the Family Partnership Program.  

Due to [A.D.B.]’s continued law violations and probation violations and him not willing to participate with FPP program, [A.D.B.] would benefit from a more structured environment. 

When the trial court questioned A.D.B. about his prior unwillingness to participate in local services through the FPP, he informed the trial court that he did in fact want to participate in the FPP.  A.D.B. admitted that he had initially told Lemear that he did not want to participate in the FPP.  However, he stated that he only did so because he wanted to make that decision with the help of his mother. 

According to A.D.B., he finally realized the importance of abiding by the terms and conditions of his probation.  A.D.B. claimed that his past misbehavior was the result of him “hanging around the wrong crowd” and “making the wrong decisions,” but he indicated that he would stay away from the “wrong crowd” in the future and follow the guidelines set by his probation officer and his mother.  He pointed to his improvement in behavior during the previous week in detention as evidence that he had learned his lesson and that he deserved another chance at probation.  A detention evaluation offered by A.D.B. showed that, despite a rough beginning, A.D.B.’s attitude and behavior had progressively improved on a daily basis throughout his detention. 

A.D.B.’s mother testified that she felt somewhat responsible for A.D.B.’s misbehavior because she had not always spent enough time with him.  She indicated that A.D.B. had cried and expressed remorse for his behavior when she recently visited him in detention.  She also indicated that she believed A.D.B. had changed and that he now understood that he was responsible for his actions.

During the hearing, the trial court received recommendations regarding A.D.B.’s placement from two professionals who had evaluated A.D.B. since he had been in juvenile detention.  In a psychological evaluation conducted March 21, 2003, Phillip Davis, a psychologist, described A.D.B. as “an impulsive and oppositional young man.”  According to Davis, he did not believe that A.D.B. was a “good candidate to be treated on an outpatient basis.”  Instead, Davis recommended placement for A.D.B. in “a secure, highly structured, residential treatment program where his day-to-day behavior and his school behavior [could] be closely monitored.”  He also noted that “[a] secure, [long-term] detention program with treatment resources would also be appropriate.”

Dr. Allen Cahill, a psychiatrist, evaluated A.D.B. on May 21, 2003, after A.D.B. threatened suicide while in a juvenile detention facility.  In his evaluation, Dr. Cahill described A.D.B. as “[a] highly manipulative but not particularly depressed boy,” who exhibited “no need for hospitalization.” According to Dr. Cahill, A.D.B. could “be monitored for impulsive behavior in a Juvenile facility”; however, he opined that A.D.B. was “so manipulative that he [could] be treated only in a closed environment.” 

At the conclusion of the hearing, the State recommended that A.D.B. be committed to TYC.  After taking the matter under advisement for a brief period of time, the trial court issued a disposition order committing A.D.B. to the care, custody, and control of TYC for an indeterminate period of time.  This appeal followed.

III.  No Abuse of Discretion Shown

In a single point, A.D.B. contends that the trial court abused its discretion by committing him to TYC because (1) the trial court included the instant offenses as part of the “previous adjudications” alleged as a basis for commitment in its disposition order and (2) the evidence is factually insufficient to support the trial court’s finding that reasonable efforts were made to prevent or eliminate the need to remove A.D.B. from his home.

A.  Standard of Review

A juvenile court has broad discretion in determining a suitable disposition for a juvenile who has been adjudged to have engaged in delinquent conduct. 
In re C.J.H.
, 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.). Accordingly, we will not reverse the juvenile court’s findings regarding disposition absent a clear abuse of discretion.  
Id.
  

To determine whether a trial court abused its discretion, we must decide whether the court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.  
In re B.N.F.
, 120 S.W.3d 873, 877 (Tex. App.—Fort Worth 2003
, 
no pet.).
  
Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Id
.  

An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence.  
Id.
  Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court’s decision.  
Id
.

B.  Inclusion of the Instant Offenses as Previous Adjudications

In his brief, A.D.B. complains that the trial court abused its discretion by committing him to TYC because it included the March 29 and March 31 burglary of a habitation offenses as part of the “previous adjudications” alleged as a basis for commitment in its disposition order.  We disagree. 

Because A.D.B. was on probation at the time of the instant offenses, during the same proceeding, the trial court considered a concurrent motion to modify disposition based on the March 29 and March 31 burglaries.  In that case, the court determined that A.D.B. had violated the reasonable and lawful terms of his probation by committing the offenses, but denied the State’s motion to modify, finding that no disposition was necessary.

In the present case, the trial court’s disposition order included the two burglary offenses in the listing of A.D.B.’s previous adjudications as the delinquent conduct supporting the concurrent motion to modify.
(footnote: 2)  As A.D.B. correctly points out, the delinquent conduct alleged in the State’s motion to modify is the same conduct for which A.D.B. was adjudicated delinquent in the instant matter.  However, the disposition order specifically labels these two offenses with the abbreviation “(MTM),” whereas it labels A.D.B.’s three previous juvenile adjudications with the abbreviation “(ADJ).”  This fact demonstrates that the trial judge did not view the two instant burglary offenses as “previous adjudications,” but rather as acts of delinquent conduct giving rise to a concurrent motion to modify a prior disposition.  
A.D.B. does not challenge the accuracy of the three previous misdemeanor adjudications listed in his juvenile history or the trial court’s conclusion that he had been “previously adjudicated delinquent” on those offenses. 
 Consequently, we are unpersuaded that the trial court’s inclusion of the two burglary offenses in the listing of A.D.B.’s previous adjudications caused the trial court to abuse its discretion.
(footnote: 3)
 C.  Factual Sufficiency of the Evidence 

A.D.B. also complains that the trial court abused its discretion by committing him to TYC because the evidence is factually insufficient to support the trial court’s finding that reasonable efforts were made to prevent or eliminate the need to remove A.D.B. from his home.  We disagree.

In determining whether the evidence is factually sufficient to support a juvenile court’s disposition order, we apply a civil standard of review.
 See D.L.C.
, 124 S.W.3d 124, 375 (Tex. App.—Fort Worth 2003, no pet.).  Thus, we consider and weigh all the evidence and set aside the judgment only if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust.  
See id.
  

To commit a juvenile to TYC, the trial
 court must find and include in its disposition order its determination that (A) it is in the child’s best interests to be placed outside his home (B) reasonable efforts were made to prevent or eliminate the need for his removal from the home and to make it possible for the child to return to his home and (C) the child cannot be provided the quality of care and level of support and supervision in his home that he needs to meet the conditions of probation.  
Tex. Fam. Code Ann.
 § 54.04(i)(1) (Vernon 2004-05).  In the instant case, the trial court made the mandatory findings in its disposition order.  In addition, the trial court also provided several reasons for its findings, including the absence of facilities, services, or programs available to meet A.D.B.’s needs and its determination that the educational needs of A.D.B. could be met by TYC.

On appeal, A.D.B. argues that his recent willingness to participate in the FPP and his behavioral improvement in detention renders the evidence factually insufficient to support the trial court’s determination that reasonable efforts were made to prevent or eliminate the need to remove A.D.B. from his home.  Our review of the record, however, reveals numerous attempts over the previous four years to rehabilitate A.D.B. without resorting to commitment in TYC.  It is clear from the record that probation, alternative schooling, stays in detention, and other types of intervention throughout the previous years did little to combat A.D.B.’s delinquent behavior.  
See In re J.D.P.
, 85 S.W.3d 420, 429 (Tex. App.—Fort Worth 2002, no pet.).  Considering the repeated efforts made by the juvenile justice system, the avenues exhausted, and the continuing concerns regarding A.D.B.’s behavior, we hold that the trial court’s finding that reasonable efforts were made to prevent or eliminate the need to remove A.D.B. from his home is not so against the great weight and preponderance of the evidence as to be manifestly unjust.  
See In re J.K.N.
, 115 S.W.3d 166, 173 (Tex. App.—Fort Worth 2003, no pet.).  Consequently, we hold that the trial court did not abuse its discretion by committing A.D.B. to TYC.  We overrule A.D.B.’s sole point.

IV.  Conclusion

Having overruled A.D.B.’s sole point, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: WALKER, J.; CAYCE, C.J.; and LIVINGSTON, JJ.

DELIVERED: August 19, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
The trial court stated in its disposition order:  

It further appears to the Court that the best interest of the child and the best interest of society will be served by committing him to the care, custody and control of the Texas Youth Commission, for the following reasons:

. . . .

(4) The child has previously been adjudicated delinquent for the following offenses on the following dates:   

Section of TPC/THSC         Date of Offense  Date of Adj/Motn to Modify

30.02(FEL)  (TPC)72468-J      3/31/03  6/10/03(MTM)

30.02(FEL)  (TPC)72468-J      3/29/03  6/10/03(MTM)

31.03(MISD)(TPC)72468-J      5/18/02  7/23/02(ADJ)

31.03(MISD)(TPC)71324-J      11/19/02          4/10/02(ADJ)

31.03(MISD)(TPC)71324-J      3/5/02          4/10/02(ADJ)

3:
On April 23, 2004, the trial court entered a judgment nunc pro tunc correcting the trial court’s June 11, 2003 Order of Commitment by deleting the two offenses from the listing of previous adjudications.