COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-059-CV
  
  
   
IN 
THE MATTER OF J.F.S.
 
  
------------
 
FROM 
THE 323RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
J.F.S., a juvenile, was adjudicated delinquent by the juvenile court judge for 
assaulting a public servant and was committed to the Texas Youth Commission (“TYC”) 
for an indeterminate period of time.  In a single issue, J.F.S. argues that 
the juvenile court erred in finding that committing him to TYC was in his best 
interests because there was no evidence regarding what programs or treatment TYC 
could offer him.  Because we hold that the trial court did not abuse its 
discretion, we will affirm.
        At 
the adjudication hearing, J.F.S., who was then sixteen years old, stipulated 
that he had struck papers clipped to a clipboard held by a school teacher and 
that the clipboard had then struck the school teacher on her hand, causing her 
pain.  J.F.S. also stipulated that the teacher was a public servant. Based 
on this stipulated evidence, the juvenile court found that J.F.S. had engaged in 
delinquent conduct by committing an assault on a public servant, a third-degree 
felony.  The juvenile court then proceeded to hold a disposition hearing 
and issued its order the next day committing J.F.S. to TYC for an indeterminate 
period of time.
        Because 
a juvenile court has broad discretion in determining a suitable disposition for 
a juvenile who has been adjudged to have engaged in delinquent conduct, we will 
not reverse the juvenile court’s decision absent a clear abuse of 
discretion.  In re C.J.H., 79 S.W.3d 698, 702 (Tex. App.—Fort 
Worth 2002, no pet.).  To determine whether a trial court abused its 
discretion, we must decide whether the court acted without reference to any 
guiding rules or principles—in other words, whether the act was arbitrary or 
unreasonable.  In re B.N.F., 120 S.W.3d 873, 877 (Tex. App.—Fort 
Worth 2003, no pet.).  An abuse of discretion does not occur as long as 
some evidence of substantive and probative character exists to support the trial 
court’s decision.  Id.  When reviewing the sufficiency of 
evidence supporting the juvenile court’s findings at the disposition phase, we 
apply civil standards of review.  C.J.H., 79 S.W.3d at 703; see 
Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001) (legal sufficiency); Garza 
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965) (factual sufficiency).
        J.F.S. 
argues that because the stated purposes of the Juvenile Justice Code limit the 
reasons for which a child may be separated from his parents, the legislature 
created a presumption that it is in a child’s best interests to be with his 
parents.  See Tex. Fam. Code 
Ann. § 51.01(5) (Vernon 2002) (stating that the Code’s purposes are to 
be achieved “in a family environment whenever possible, separating the child 
from the child’s parents only when necessary for the child’s welfare or in 
the interest of public safety and when a child is removed from the child’s 
family, to give the child the care that should be provided by parents”); see 
also Tex. Fam. Code Ann. § 
54.04(i)(1)(A) (Vernon Supp. 2004-05) (providing that if the court places a 
child on probation outside the child’s home or commits the child to TYC, the 
court must determine that it is in the child’s best interests to be placed 
outside the child’s home).  J.F.S. contends that, without any evidence of 
treatment programs or other services that TYC would have to offer him, this 
“parental presumption” was not overcome, so the juvenile court abused its 
discretion in removing him from his family and committing him to TYC.
        However, 
the Code does not impose any burden of proof on the State at the disposition 
phase of a juvenile proceeding.  See C.J.H., 79 S.W.3d at 703.  
Accordingly, J.F.S. is incorrect in asserting that section 51.01 creates a 
“parental presumption” that the State must overcome.  Instead, section 
51.01 merely sets forth the public purposes underlying the Code and states that 
courts shall construe the Code’s provisions to effectuate those 
purposes.  Tex. Fam. Code Ann. 
§ 51.01.  Furthermore, the paramount purpose of the Code is “to provide 
for the protection of the public and public safety.”  Id. § 
51.01(1); see In re J.P., 136 S.W.3d 629, 633 (Tex. 2004) (stating that 
“in the Juvenile Justice Code, the best interests of children who engage in 
serious and repeated delinquent conduct are superseded to the extent they 
conflict with public safety.”).
        The 
juvenile court specifically found in the order of commitment that “the child, 
in the child’s home cannot be provided the quality of care and level of 
support and supervision that the child needs to meet the condition of 
probation.”  Furthermore, the juvenile court found that “the best 
interest of the child and the best interest of society will be served by 
committing him to the care, custody and control of the Texas Youth 
Commission.”  The court’s reasons for this finding were that (1) no 
facilities, services, or programs that would meet J.F.S.’s needs were 
available, (2) J.F.S.’s educational needs could be met by TYC, (3) J.F.S. had 
been adjudicated delinquent for committing felony assault, and (4) J.F.S. had 
previously been adjudicated delinquent for two prior offenses: misdemeanor 
possession of a prohibited weapon and felony delivery of a controlled substance.
        We 
conclude that the evidence contained in the record is sufficient to support the 
juvenile court’s findings.  J.F.S.’s social history, which was reviewed 
by the juvenile court before committing him to TYC, revealed his repeated 
problematic and criminal behavior as well as his diagnoses of ADHD and 
depression.  J.F.S. was prescribed prescription medication but did not take 
it on a regular basis.  J.F.S. had previously been unsuccessfully 
discharged from the Tarrant Youth Recovery Center (“TYRC”) because TYRC 
personnel determined that he needed more advanced therapeutic or psychological 
services than TYRC could provide.  J.F.S. was then referred to Mental 
Health Mental Retardation (“MHMR”) for treatment through the Family 
Partnership Program, but MHMR doctors were unable to prescribe any medication or 
treat J.F.S. because he and his family failed to attend their MHMR 
appointments.  In addition, J.F.S.’s school attendance and grades were 
poor.
        The 
social history also revealed that, in addition to J.F.S.’s two prior 
adjudications of delinquency for delivering a controlled substance and for 
possessing a prohibited weapon, J.F.S. had received six months’ deferred 
probation for arson and a supervisory caution for being suspended from 
school.  He violated the terms of his probation for the prior delinquency 
adjudications by failing to attend counseling; as a result, his probation was 
extended and he was ordered to serve ten days’ post-adjudication 
confinement.  J.F.S. admitted at the hearing to using alcohol and cocaine 
before his arrest on the assault charge, and he told the court that he thought 
he had a drug problem.
        J.F.S. 
also had a history of destructive behavior at home, including breaking sinks and 
windows and punching holes in doors.  The month before the adjudication 
hearing, J.F.S. took his mother’s van without permission, broke into a car 
parked in a Wal-Mart parking lot and stole items from the car, and then ran away 
from home.  After a neighbor informed police a few weeks later that J.F.S. 
had returned home, police officers went to his house to apprehend him, but J.F.S. 
attempted to escape through the back door and refused to give the officers his 
true identity.  J.F.S.’s own mother testified that she could not control 
him and that he needed to be in a mental health or psychological health facility 
so that he could be treated and stabilized with medication.
        J.F.S.’s 
probation officer testified that other than sex offender treatment, which did 
not apply to J.F.S. because he had not committed a sex-related crime, J.F.S. had 
received every rehabilitative resource available in Tarrant County, including 
TYRC, MHMR services, intensive supervision probation, and post-adjudication 
confinement. Nevertheless, J.F.S. continued to engage in criminal conduct and 
violate the terms of his court-ordered probation.  The probation officer 
also stated in the social history that J.F.S. was “in need of increased 
supervision”; furthermore, the drug assessment of J.F.S. attached to the 
social history recommended residential treatment for his reported substance 
abuse.
        Clearly, 
numerous attempts have been made to cope with J.F.S.’s behavior without 
resorting to commitment to TYC.  Unfortunately, J.F.S. continues to exhibit 
delinquent and criminal behavior in spite of the measures taken to conform his 
conduct to the law.  Considering the efforts already made, the avenues 
exhausted, and the concerns regarding J.F.S.’s continuing criminal behavior, 
we hold that the juvenile court did not abuse its discretion by committing J.F.S. 
to TYC.  See Tex. Fam. Code 
Ann. § 54.04(i)(1) (setting forth requirements for committing child to 
TYC); In re J.K.N., 115 S.W.3d 166, 173 (Tex. App.—Fort Worth 2003, no 
pet.) (affirming order of commitment to TYC for juvenile with psychiatric needs 
who had continued to engage in criminal activity and had exhausted all other 
treatment and probation options).  Accordingly, we affirm the juvenile 
court’s judgment.
 
  
                                                                  PER 
CURIAM
  
  
  
PANEL 
F:   MCCOY, J.; CAYCE, C.J.; and WALKER, J.
 
DELIVERED: 
February 17, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.