Rhonda Joyce Ellis

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-059-CV

IN THE MATTER OF J.F.S.

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant J.F.S., a juvenile, was adjudicated delinquent by the juvenile court judge for assaulting a public servant and was committed to the Texas Youth Commission (“TYC”) for an indeterminate period of time.  In a single issue, J.F.S. argues that the juvenile court erred in finding that committing him to TYC was in his best interests because there was no evidence regarding what programs or treatment TYC could offer him.  Because we hold that the trial court did not abuse its discretion, we will affirm.

At the adjudication hearing, J.F.S., who was then sixteen years old, stipulated that he had struck papers clipped to a clipboard held by a school teacher and that the clipboard had then struck the school teacher on her hand, causing her pain.  J.F.S. also stipulated that the teacher was a public servant. Based on this stipulated evidence, the juvenile court found that J.F.S. had engaged in delinquent conduct by committing an assault on a public servant, a third-degree felony.  The juvenile court then proceeded to hold a disposition hearing and issued its order the next day committing J.F.S. to TYC for an indeterminate period of time.

Because a juvenile court has broad discretion in determining a suitable disposition for a juvenile who has been adjudged to have engaged in delinquent conduct, we will not reverse the juvenile court’s decision absent a clear abuse of discretion.  
In re C.J.H.
, 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.). 
 To determine whether a trial court abused its discretion, we must decide whether the court acted without reference to any guiding rules or principles—in other words, whether the act was arbitrary or unreasonable.  
In re B.N.F.
, 120 S.W.3d 873, 877 (Tex. App.—Fort Worth 2003, no pet.).  An abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court’s decision.  
Id.  
When reviewing the sufficiency of evidence supporting the juvenile court’s findings at the disposition phase, we apply civil standards of review.  
C.J.H.
, 79 S.W.3d at 703; 
see 
Bradford v. Vento, 
48 S.W.3d 749, 754 (Tex. 2001)
 
(legal sufficiency); 
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965) (factual sufficiency).

J.F.S. argues that because the stated purposes of the Juvenile Justice Code limit the reasons for which a child may be separated from his parents, the legislature created a presumption that it is in a child’s best interests to be with his parents.  
See 
Tex. Fam. Code Ann.
 § 51.01(5) (Vernon 2002) (stating that the Code’s purposes are to be achieved “in a family environment whenever possible, separating the child from the child’s parents only when necessary for the child’s welfare or in the interest of public safety and when a child is removed from the child’s family, to give the child the care that should be provided by parents”); 
see also 
Tex. Fam. Code Ann. 
§ 54.04(i)(1)(A) (Vernon Supp. 2004-05) (providing that if the court places a child on probation outside the child’s home or commits the child to TYC, the court must determine that it is in the child’s best interests to be placed outside the child’s home).  J.F.S. contends that, without any evidence of treatment programs or other services that TYC would have to offer him, this “parental presumption” was not overcome, so the juvenile court abused its discretion in removing him from his family and committing him to TYC.

However, the Code does not impose any burden of proof on the State at the disposition phase of a juvenile proceeding.  
See C.J.H.
, 79 S.W.3d at 703.  Accordingly, J.F.S. is incorrect in asserting that section 51.01 creates a “parental presumption” that the State must overcome.  Instead, section 51.01 merely sets forth the public purposes underlying the Code and states that courts shall construe the Code’s provisions to effectuate those purposes.  
Tex. Fam. Code Ann.
 § 51.01.  Furthermore, the paramount purpose of the Code is “to provide for the protection of the public and public safety.”  
Id.
 § 51.01(1); 
see In re J.P.
, 136 S.W.3d 629, 633 (Tex. 2004) (stating that “in the Juvenile Justice Code, the best interests of children who engage in serious and repeated delinquent conduct are superseded to the extent they conflict with public safety.”).

The juvenile court specifically found in the order of commitment that “the child, in the child’s home cannot be provided the quality of care and level of support and supervision that the child needs to meet the condition of probation.”  Furthermore, the juvenile court found that “the best interest of the child and the best interest of society will be served by committing him to the care, custody and control of the Texas Youth Commission.”  The court’s reasons for this finding were that (1) no facilities, services, or programs that would meet J.F.S.’s needs were available, (2) J.F.S.’s educational needs could be met by TYC, (3) J.F.S. had been adjudicated delinquent for committing felony assault, and (4) J.F.S. had previously been adjudicated delinquent for two prior offenses: misdemeanor possession of a prohibited weapon and felony delivery of a controlled substance.

We conclude that the evidence contained in the record is sufficient to support the juvenile court’s findings.  J.F.S.’s social history, which was reviewed by the juvenile court before committing him to TYC, revealed his repeated problematic and criminal behavior as well as his diagnoses of ADHD and depression.  J.F.S. was prescribed prescription medication but did not take it on a regular basis.  J.F.S. had previously been unsuccessfully discharged from the Tarrant Youth Recovery Center (“TYRC”) because TYRC personnel determined that he needed more advanced therapeutic or psychological services than TYRC could provide.  J.F.S. was then referred to Mental Health Mental Retardation (“MHMR”) for treatment through the Family Partnership Program, but MHMR doctors were unable to prescribe any medication or treat J.F.S. because he and his family failed to attend their MHMR appointments.  In addition, J.F.S.’s school attendance and grades were poor. 

The social history also revealed that, in addition to J.F.S.’s two prior adjudications of delinquency for delivering a controlled substance and for possessing a prohibited weapon, J.F.S. had received six months’ deferred probation for arson and a supervisory caution for being suspended from school.  He violated the terms of his probation for the prior delinquency adjudications by failing to attend counseling; as a result, his probation was extended and he was ordered to serve ten days’ post-adjudication confinement.  J.F.S. admitted at the hearing to using alcohol and cocaine before his arrest on the assault charge, and he told the court that he thought he had a drug problem. 

J.F.S. also had a history of destructive behavior at home, including breaking sinks and windows and punching holes in doors.  The month before the adjudication hearing, J.F.S. took his mother’s van without permission, broke into a car parked in a Wal-Mart parking lot and stole items from the car, and then ran away from home.  After a neighbor informed police a few weeks later that J.F.S. had returned home, police officers went to his house to apprehend him, but J.F.S. attempted to escape through the back door and refused to give the officers his true identity.  J.F.S.’s own mother testified that she could not control him and that he needed to be in a mental health or psychological health facility so that he could be treated and stabilized with medication.

J.F.S.’s probation officer testified that other than sex offender treatment, which did not apply to J.F.S. because he had not committed a sex-related crime, J.F.S. had received every rehabilitative resource available in Tarrant County, including TYRC, MHMR services, intensive supervision probation, and post-adjudication confinement.  Nevertheless, J.F.S. continued to engage in criminal conduct and violate the terms of his court-ordered probation.  The probation officer also stated in the social history that J.F.S. was “in need of increased supervision”; furthermore, the drug assessment of J.F.S. attached to the social history recommended residential treatment for his reported substance abuse.

Clearly, numerous attempts have been made to cope with J.F.S.’s behavior without resorting to commitment to TYC.  Unfortunately, J.F.S. continues to exhibit delinquent and criminal behavior in spite of the measures taken to conform his conduct to the law.  Considering the efforts already made, the avenues exhausted, and the concerns regarding J.F.S.’s continuing criminal behavior, we hold that the juvenile court did not abuse its discretion by committing J.F.S. to TYC.  
See 
Tex. Fam. Code Ann.
 § 54.04(i)(1) (setting forth requirements for committing child to TYC); 
In re J.K.N.
, 115 S.W.3d 166, 173 (Tex. App.—Fort Worth 2003, no pet.) (affirming order of commitment to TYC for juvenile with psychiatric needs who had continued to engage in criminal activity and had exhausted all other treatment and probation options).  Accordingly, we affirm the juvenile court’s judgment.

PER CURIAM

PANEL F: MCCOY, J.; CAYCE, C.J.; and WALKER
, J.

DELIVERED:  February 17, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.