In re R.W.R.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-331-CV

IN THE MATTER OF R.W.R.

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant R.W.R. appeals from the trial court’s disposition order committing him to the Texas Youth Commission (TYC) for a term of eight years.  In his sole issue, R.W.R. complains that the trial court abused its discretion by committing him to the TYC.  We will affirm.

II.  Factual and Procedural Background

On September 29, 2004, R.W.R. stipulated to evidence establishing that he engaged in delinquent conduct by committing the felony of indecency with a child on September 1, 2003.  The trial court adjudicated R.W.R. delinquent and proceeded to the disposition phase where multiple witnesses testified, including R.W.R.  The trial court admitted a social history report completed by Rodney D. Lee, a probation officer, and a prior judgment of delinquency and probation order. 

Evidence presented at the disposition hearing showed that R.W.R. has lived with his grandmother in Dallas for most of his life.  He often visited his mother during the summertime and moved in with her from October 2002 to April 2003.  R.W.R. moved in with his mother because his behavior began to deteriorate and he began to make very poor choices while living with his grandmother.
(footnote: 2)  R.W.R.’s mother testified that he moved in with her in order “to get back on the right track” and to “start fresh . . . with a new, clean record.”  R.W.R., however, continued in the same line of conduct—making friends his mother disapproved of, making failing grades, getting into trouble at school. R.W.R’s mother kicked him out of her house after he raised his hand as if to strike her.  R.W.R. lived with his uncle from summer 2003 to May 2004. R.W.R. left his uncle’s house and returned to live with his grandmother in May 2004 because he felt his uncle was too strict. 

The State established that R.W.R. has been involved in numerous criminal activities over the last two years.  Norma Coronado, a resident of Mesquite, testified that her house was broken into on October 4, 2002 and that her Ford F-150 pickup truck was stolen.  Dallas police located the stolen truck five days later while it was being driven and pulled it over.  R.W.R. was the driver, and he was arrested for unauthorized use of a motor vehicle.  The case was ultimately dismissed. 

Joe McGlothlin of Arlington testified that on May 16, 2003 he stepped outside to make sure the doors to his truck were locked.  McGlogthlin encountered R.W.R. inside of his truck, and R.W.R. pointed a handgun at him and said, “back.”  McGlothlin called 911, and police later apprehended R.W.R. after he attempted to flee on foot.  In R.W.R.’s possession was McGlothlin’s cell phone and a pocket knife.  During the foot chase, R.W.R. discarded what turned out to be a BB gun (which looked like a Sig-Sauer P232) and a black ski mask.  R.W.R. was adjudicated delinquent of robbery, possession of a prohibited weapon, and evading arrest and was placed on probation by an order signed on August 26, 2003.  He testified that he feels as though he has “changed” and matured since the robbery incident in May 2003. 

The events R.W.R. stipulated to at the adjudication hearing occurred in September 2003, shortly after he was placed on probation.  R.W.R. stipulated to evidence that while at his mother’s residence he intentionally touched the vagina of his then seven-year-old sister with the intent to gratify his sexual desires.

In March 2004, brass knuckles were found in R.W.R.’s backpack at school.  He admitted they were his, but insisted he accidentally took them to school.  R.W.R.’s social history report indicates that he was expelled from Arlington Independent School District and that he enrolled in the Juvenile Justice Alternative Education Program (JJAEP) where he successfully completed forty-two days of his ninety-day expulsion. 

In May 2004, Dalworthington Gardens police officers pulled over a vehicle reported to be driving erratically; R.W.R. was driving.  Inside they found a BB gun that resembled a Glock and a set of brass knuckles.  R.W.R. admitted that the brass knuckles were his. 

In July 2004, R.W.R. was shot in what he described as an “attempted carjacking” of his vehicle. 

At the conclusion of the hearing, the State recommended that R.W.R. be committed to the TYC.  After a brief recess, the trial court committed R.W.R. to the TYC for a term of eight years with a possible transfer to the Institutional Division of the Texas Department of Criminal Justice.  This appeal followed.

III.  Sufficiency of Evidence

R.W.R. argues that the trial court abused its discretion by committing him to the TYC because the evidence is legally and factually insufficient to support the trial court’s findings (1) that reasonable efforts were made to prevent or eliminate the need for his removal from home and to make it possible to return home and (2) that he cannot be provided the quality of care and level of support and supervision in his home that he needs to meet the conditions of probation. 
A.  Standard of Review and Legal Standards

After a juvenile has been adjudged to have engaged in delinquent conduct, the juvenile court has broad discretion to determine a suitable disposition.  
In re C.J.H.
, 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.).  We will not reverse the juvenile court’s findings regarding disposition absent a clear abuse of discretion.  
Id
.

To determine whether a trial court abused its discretion, we must decide whether the court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.  
In re B.N.F.
, 120 S.W.3d 873, 877 (Tex. App.—Fort Worth 2003, no pet.).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Id
.

An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence.  
Id
.  Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court’s decision.  
Id
.

In an appeal from a juvenile disposition, we apply the civil standards of review for legal and factual sufficiency of the evidence, which are relevant factors in determining whether the trial court abused its discretion.  
C.J.H.
, 79 S.W.3d at 702-03; 
see also In re D.L.C.
, 124 S.W.3d 354, 375 (Tex. App.—Fort Worth 2003, no pet.).  In reviewing legal sufficiency, we consider only the evidence and inferences tending to support the findings under attack and set aside the judgment only if there is no evidence of probative force to support the findings.  
D.L.C.
, 124 S.W.3d at 375; 
C.J.H
, 79 S.W.3d at 703; 
In
 
re T.K.E.
, 5 S.W.3d 782, 785 (Tex. App.—San Antonio 1999, no pet.).  In reviewing factual sufficiency, we consider and weigh all the evidence and set aside the judgment only if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust.  
D.L.C.
, 124 S.W.3d at 375; 
T.K.E.
, 5 S.W.3d at 785.

B.  Evidence Legally and Factually Sufficient

To commit a juvenile to the TYC, the trial court must find and include in its disposition order its determination that (A) it is in the child’s best interests to be placed outside his home, (B) reasonable efforts were made to prevent or eliminate the need for the child’s removal from the home and to make it possible for the child to return to his home, and (C) the child cannot be provided the quality of care and level of support and supervision in his home that he needs to meet the conditions of probation.  
Tex. Fam. Code Ann.
 § 54.04(i)(1) (Vernon Supp. 2004-05).  Here, the trial court made the mandatory findings in its disposition order. 

The record demonstrates that attempts were made to rehabilitate R.W.R. without committing him to the TYC.  In August 2003, R.W.R. was placed on probation, as opposed to being committed to the TYC, after being adjudicated delinquent of robbery, possession of a prohibited weapon, and evading arrest. The probation order states that the best interests of the child and society will be served by placing R.W.R. on probation in order “[t]o afford the juvenile an opportunity for rehabilitation under the supervision of the Court and/or to prevent law violations.”  Moreover, R.W.R.’s social history report indicates his involvement in the following “Juvenile Services Programs”: TCAP (6-13-03 to 8-24-03), Home Detention (6-03-03 to 6-12-03), Electronic Monitoring (6-13-03 to 6-26-03), ISP (6-16-03 to 10-16-03), Spotlight (6-16-03 to 6-27-03), and JJAEP (4-12-04 to time of trial).  Despite participation in these programs and despite having previously been placed on probation, R.W.R. stipulated to evidence establishing that he engaged in delinquent conduct by committing the offense of indecency with a child, a second degree felony punishable by confinement of up to twenty years.  Considering R.W.R.’s involvement in the various juvenile programs and the juvenile court’s express attempt to rehabilitate him by placing him on probation, we hold that there is both legally and factually sufficient evidence to support the trial court‘s finding that reasonable efforts were made to prevent or eliminate the need to remove R.W.R. from his home and to make it possible to return home.  
See D.L.C.
, 124 S.W.3d at 375;
 T.K.E.
, 5 S.W.3d at 785.

With regard to R.W.R.’s other argument challenging the trial court’s finding that he cannot be provided the quality of care and level of support and supervision in his home that he needs to meet the conditions of probation, the trial court heard evidence that R.W.R. lived with his grandmother at the time his behavior began to deteriorate.  He then lived with his mother, but she kicked him out.  R.W.R. also lived with his uncle, but R.WR. moved out and returned to his grandmother’s because he thought his uncle was too strict.  R.W.R.’s mother testified that he had a good support system, that he had people who loved him, and that he “had a lot of opportunities.”  Nonetheless, R.W.R. engaged in delinquent behavior despite the presence of family members attempting to provide support and guidance for him.  Recognizing this, the trial court, in its disposition order, found that it would be in the best interests of R.W.R. and society if he was committed to the TYC because R.W.R. “needs a highly structured environment with constant supervision and control.”  Thus, we hold that there is both legally and factually sufficient evidence to support the trial court’s finding that R.W.R. cannot be provided the quality of care and the level of support and supervision that he needs to meet the conditions of probation.  
See D.L.C.
, 124 S.W.3d at 375; 
T.K.E.
, 5 S.W.3d at 785.  Accordingly, the trial court did not abuse its discretion by committing R.W.R. to the TYC.  We overrule R.W.R.’s sole issue.

IV.  Conclusion

Having overruled R.W.R.’s sole issue, we affirm the trial court’s judgment.   

PER CURIAM

PANEL F: WALKER, J.; CAYCE, C.J.; and LIVINGSTON, J.

DELIVERED: August 4, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
This included making failing grades in school, being truant twenty-one times, being arrested for unauthorized use of a motor vehicle, and being involved with drugs.